[Cite as *State ex rel. Farrell v. Indus. Comm.*, 2018-Ohio-2164.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Steven R. Farrell, | : | |
| Relator, | : | |
| v. | : | No. 17AP-126 |
| The Ohio Industrial Commission and | : | (REGULAR CALENDAR) |
| Tanknology Inc., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on June 5, 2018

**On brief:** *Spears & Associates Co., L.P.A.,* and *David R. Spears,* for relator.

**On brief:** *Michael DeWine*, Attorney General, and *Natalie J. Tackett,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

LUPER SCHUSTER, J.

{¶ 1} Relator, Steven R. Farrell, initiated this original action requesting a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate the November 17, 2016 order of its staff hearing officer ("SHO") denying his application for permanent total disability ("PTD") compensation and to enter an order granting his application.

{¶ 2} This court referred the matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate rendered a decision

that includes findings of fact and conclusions of law.  The magistrate's decision, which is appended hereto, recommends this court deny Farrell's request for a writ of mandamus.

{¶ 3}  Farrell has filed objections to the magistrate's decision.  Therefore, we must independently review the decision to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law."  Civ.R. 53(D)(4)(d).  Farrell does not challenge the magistrate's recitation of the pertinent facts; however, he objects to the magistrate's conclusion that the commission did not abuse its discretion in denying his application for PTD compensation.  More specifically, Farrell asserts the doctrine of stare decisis operates to compel the commission to conclude he is not capable of sustained remunerative employment.

{¶ 4}  This court will not determine that the commission abused its discretion in denying an application for PTD compensation when there is some evidence in the record to support the commission's finding.  *State ex rel. Rouch v. Eagle Tool & Machine Co.*, 26 Ohio St.3d 197, 198 (1986).  The some evidence standard "reflects the established principle that the commission is in the best position to determine the weight and credibility of the evidence and disputed facts."  *State ex rel. Woolum v. Indus. Comm.*, 10th Dist. No. 02AP-780, 2003-Ohio-3336, ¶ 4, citing *State ex rel. Pavis v. Gen. Motors Corp., B.O.C. Group*, 65 Ohio St.3d 30, 33 (1992).

{¶ 5}  In denying Farrell's application for PTD compensation, the commission relied on the report of Stephen Halmi, Psy.D., accepting his opinion that Farrell "is capable of performing work in a position with the same or routine daily expectations within a supportive environment."  (Nov. 17, 2016 SHO Decision at 2.)  However, Farrell moved for reconsideration on the grounds that the commission, in a separate and wholly unrelated decision, granted a different injured worker's application for PTD where Dr. Halmi rendered an opinion with nearly identical language as the opinion he rendered in Farrell's case.  In the unrelated case, the commission concluded that, despite Dr. Halmi's stated conclusion that the injured worker would be capable of performing work in a low to moderate stress position, "the restrictions Dr. Halmi specified in his report are so extensive and severe as to constitute in reality an opinion the Injured Worker is not capable of sustained remunerative employment."  (Ex. A at 2, attached to Dec. 21, 2016 Mot. for Recons.)

{¶ 6} Farrell now argues that because the opinions rendered by Dr. Halmi in the two cases are nearly identical, the doctrine of stare decisis compels the commission to reach the same conclusion in both his case and the case of the unrelated worker. In considering Farrell's stare decisis argument, the magistrate concluded stare decisis did not compel this court to grant Farrell's requested writ. However, in reaching that conclusion, the magistrate opined the commission erroneously used Dr. Halmi's opinion in the unrelated case in order to grant the unrelated injured worker's application for PTD benefits. Because that former case was not before the magistrate and is not before the court at this time, it was error for the magistrate to render an opinion on the propriety of the commission's reliance on Dr. Halmi's opinion in that unrelated case.

{¶ 7} Despite the magistrate's error in opining on the commission's separate unrelated case, we nonetheless agree with the magistrate that the doctrine of stare decisis does not compel us to issue Farrell's requested writ of mandamus in this case. According to the doctrine of stare decisis, "courts follow 'controlling precedent, thus creating stability and predictability in our legal system.' " *Rural Health Collaborative of S. Ohio, Inc. v. Testa*, 145 Ohio St.3d 430, 2016-Ohio-508, ¶ 38, quoting *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 1. However, as the Supreme Court of Ohio has noted, "stare decisis typically applies to principles of law, not findings of fact." *Rural Health Collaborative of S. Ohio, Inc.* at ¶ 38, citing *State v. Bethel*, 10th Dist. No. 07AP-810, 2008-Ohio-2697, ¶ 26 ("[s]tare decisis has two aspects: (1) that in the absence of overriding considerations courts will adhere to its [sic] own previously announced principles of law; and (2) that courts are bound by and must follow decisions of a reviewing court that has decided the same issue"); *Terrell v. Williams*, 10th Dist. No. 79AP-16 (May 24, 1979) (stating stare decisis is "based upon following controlling legal principals [sic] from former judgments," and is "not applicable where the prior case decided factual matters").

{¶ 8} To conclude that the commission must use Dr. Halmi's report to determine Farrell is entitled to PTD would be to ignore the myriad factual intricacies at play in both Farrell's case and the case of the unrelated injured worker. Both decisions involve heavily fact-dependent determinations by the commission, and it is the commission's role, in each case it evaluates, to determine the appropriate weight given to the evidence before it. *See State ex rel. Moss v. Indus. Comm.*, 75 Ohio St.3d 414 (1996) (noting the commission is the

"exclusive evaluator of disability" and the courts will not reevaluate and reweigh the evidence before the commission); and *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165, 169 (1981) ("[q]uestions of credibility and the weight to be given evidence are clearly within the Commission's discretionary powers of fact-finding"). Thus, because we agree with the magistrate that the doctrine of stare decisis does not compel the commission to grant Farrell's application for PTD, we reject Farrell's challenge to the magistrate's decision.

{¶ 9} Following our independent review of the record pursuant to Civ.R. 53, we find the magistrate correctly determined Farrell is not entitled to the requested writ of mandamus. Accordingly, we adopt the magistrate's factual findings, and, to the extent outlined above, adopt the magistrate's conclusions of law as modified. We, therefore, overrule Farrell's objections to the magistrate's decision and deny his request for a writ of mandamus.

*Objections overruled; writ of mandamus denied.*

BROWN, P.J., and BRUNNER, J., concur.

———————————

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Steven R. Farrell, | : | |
| Relator, | : | |
| v. | : | No.  17AP-126 |
| The Ohio Industrial Commission and | : | (REGULAR CALENDAR) |
| Tanknology Inc., | : | |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on January 18, 2018

*Spears & Associates Co., L.P.A.,* and *David R. Spears,* for relator.

*Michael DeWine,* Attorney General, and *Natalie J. Tackett,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 10} In this original action, relator, Steven R. Farrell, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate the November 17, 2016 order of its staff hearing officer ("SHO") that denies his application for permanent total disability ("PTD") compensation, and to enter an order granting the application.

Findings of Fact:

{¶ 11} 1. On March 11, 2002, relator injured his lower back while employed as a technician for respondent Tanknology Inc., a state-fund employer.  The injury occurred when relator was moving a heavy manway cover.

{¶ 12} 2. The industrial claim (No. 02-333346) is allowed for:

> Sprain lumbosacral; protruding disc L3-L4; aggravation pre-existing annular tears L2-3, L3-4, and L4-5; depressive disorder.

{¶ 13} 3. On November 6, 2014, at the request of the Ohio Bureau of Workers' Compensation ("bureau"), relator was examined by psychiatrist James R. Hawkins, M.D. In his ten-page narrative report, Dr. Hawkins opined that relator has a depressive disorder caused by the industrial injury. Dr. Hawkins also opined that the psychological condition prevents relator's return to his former position of employment.

{¶ 14} 4. On December 9, 2014, the bureau mailed an order additionally allowing the claim for "depressive disorder NEC." The bureau order also awarded temporary total disability ("TTD") compensation based on the report of Dr. Hawkins.

{¶ 15} 5. Following a March 2, 2016 hearing, an SHO issued an order terminating TTD compensation effective November 20, 2015 on grounds that the allowed psychological condition has reached maximum medical improvement ("MMI").

{¶ 16} 6. Earlier, on January 28, 2016, at relator's request, he was examined by clinical psychologist Regina McKinney, Psy.D. In her two-page narrative report, dated February 4, 2016, Dr. McKinney opined:

> It is my opinion based on a reasonable degree of psychological certainty that Mr. Farrell is permanently and totally disabled from all forms of sustained remunerative employment based solely upon the allowed psychological condition in his claim. His symptoms of depression are severe and cause significant occupational and social impairment. Evaluation findings indicate that his symptoms of depression prohibit him from even sedentary type positions. He lacks motivation to maintain consistent attendance and would likely have significant difficulty focusing to complete tasks. He appears to be easily overwhelmed and easily angered. He had altercations at work and his symptoms of depression would interfere with his ability to maintain productive work relationships. He would likely have difficulty sustaining attention and concentration even when working independently. It would be difficult for him to multi-task and complete job tasks in a timely fashion.

{¶ 17} 7. On March 9, 2016, relator filed an application for PTD compensation. In support, relator submitted the February 4, 2016 report of Dr. McKinney.

{¶ 18} 8. On April 26, 2016, at the commission's request, relator was examined by psychologist Stephen W. Halmi, Psy.D. In his 11-page narrative report, Dr. Halmi opined:

> Based on this examination, it is my opinion that Mr. Farrell has reached MMI for his allowed psychological condition of Depressive Disorder. My opinion is based on several factors. For example, there is no evidence, based on Mr. Farrell's self-report, that his depression has improved significantly with the utilization of outpatient psychotherapy and psychotropic medication. Objective test results indicate that he remains depressed. It is my opinion that his depression is maintained by his belief that he is incapable of changing his circumstances as well as by the fact that his physical restrictions prevent him from engaging in productive and/or enjoyable activities. It is my opinion that his belief that he is helpless and hopeless to influence his life maintains his depression. He also remains miserable because of his chronic pain.
>
> It is my opinion that Mr. Farrell's Depression results in a moderate impairment in his overall functioning. The final percentage of impairment is an average of the percentages of impairment for the four areas of functioning listed above (35% + 35% + 35% + 35%=140%; 140%/4=35%). Thus, it is my opinion that his Depressive Disorder results in a 35% Whole Person Impairment (WPI) as referenced in the AMA Guides to the Evaluation of Permanent Impairment-Fifth Edition.
>
> * * *
>
> Any mention of impairment is based on his allowed psychological condition of Depressive Disorder. It is my opinion that Mr. Farrell's ability to carry out simple, one and two step instructions is not impaired. It is my opinion that his ability to understand and remember detailed instructions that do not surpass his intellectual abilities is moderately impaired. It is my opinion that his ability to carry out detailed instructions and maintain adequate attention and concentration for extended periods of time is moderately impaired. It is my opinion that his ability to work within a schedule, maintain attendance, and be punctual without impairment from his psychological condition is moderately impaired. It is my opinion that his ability to work with or close to others without being distracted by them is moderately

impaired. It is my opinion that his ability to work quickly and efficiently, meet a deadline, and complete a normal workday and work week without interruption is moderately impaired. It is my opinion that his ability to work at a consistent pace without an unreasonable number and length of breaks is moderately impaired. It is my opinion that his ability to interact with the general public is mildly impaired. It is my opinion that his ability to accept instructions, respond appropriately to criticism from supervisors, and his ability to get along with coworkers without being distracted by them is moderately impaired. It is my opinion that his ability to maintain socially appropriate behavior and maintain the basic standard of cleanliness and grooming is mildly impaired. It is my opinion that his ability to respond appropriately to changes at work, set realistic goals, and make plans independently of others is moderately impaired. Based on these impairments, it is my opinion that Mr. Farrell would be capable of working in a low to moderate stress position. Because of his depressive symptoms, it is my opinion that he would initially work best in a relatively simple job in which he was required to complete straight forward tasks. This would help him develop a sense of mastery and improve his self-esteem. He would likely work best in a predictable job in which there were little changes in tasks and expectations from day to day. Because of his concentration problems, clear guidelines and protocols, possibly written out and posted, would likely benefit him. He would work best if afforded flexibility with regard to pace of work, timing of breaks, exact hours worked, and possibly days worked, to accommodate his fluctuation in energy level. Because of his irritability and anhedonia, it would be best if he did not work with the general public, at least initially. It would also be in his best interest if his supervisor was aware of his depression and supportive of the accommodations needed for him to be a successful employee. At this time, it is my opinion that he could not work competitively in a fast paced environment or in a job that required quotas and/or a high demands for productivity and quick turnarounds. In summary, he would work best in a routine, predictable job with consistent expectations from day to day in a highly supportive work environment.

{¶ 19} 9. On May 19, 2016, Dr. Halmi completed a form captioned "Occupational Activity Assessment, Mental & Behavioral Examination." On the form, Dr. Halmi indicated by his mark "[t]his Injured Worker is capable of work with the

limitation(s)/modification(s) noted below."  In the space provided, Dr. Halmi wrote "see report."

{¶ 20} 10. Earlier, on May 4, 2016, at the commission's request, relator was examined by Steven S. Wunder, M.D., who specializes in physical medicine and rehabilitation.  In his four-page narrative report dated May 4, 2016, Dr. Wunder opines:

> Based on the AMA Guides to the Evaluation of Permanent Impairment, Fifth Edition, for the recognized and allowed condition of a sprain, lumbosacral, that is zero percent to the whole person.
>
> For the allowances of protruding disc L3-L4; aggravation of pre-existing annular tears, L2-L3, L3-L4 and L4-L5, he would have a DRE category 3 impairment, that is 10 percent to the whole person.
>
> His combined impairment would be 10 percent to the whole person.
>
> * * *
>
> The Physical Strength Rating form has been completed. He would be capable of a full range of light functional capacities.

{¶ 21} 11. On May 4, 2016, Dr. Wunder completed a "Physical Strength Rating" form.  On the form, Dr. Halmi indicated by his mark that relator is capable of "light work."

{¶ 22} 12. Following a November 17, 2016 hearing, an SHO issued an order denying relator's PTD application.  The order states reliance on the medical reports of Drs. Wunder and Halmi in determining residual functional capacity.  Ohio Adm.Code 4121-3-34(B)(4).  The SHO found it necessary to consider the non-medical factors.  The SHO's order states:

> The Injured Worker is a 59 year old male with a high school education. He has a varied work history. For five years (1978-1984) he worked as a laborer on an assembly line. Next, he worked as a carpenter for both residential and commercial construction for 16 years (1984-2000). For two years he worked as a yardman, operating both forklifts and overhead cranes (2000-2002). From 2000 to 2002 the Injured Worker worked cleaning underground storage tanks. He was injured on 03/11/2002 when he picked up a manway cover, weighing 50 to 75 pounds, pulling his lower back. The claim was initially

recognized for lumbosacral sprain. In 2003 the protruding L3-4 disc was added to the claim. The annular tears were allowed by way of aggravation in 2005. Treatment for the low back has been conservative, including physical therapy, chiropractic treatment and the medications Neurontin, Flexeril and Ibuprofen.

Following the work injury, the Injured Worker has twice successfully completed a vocational rehabilitation program. Following his referral to vocational rehabilitation in 2005 the Injured Worker returned to work in July, 2006 as a compliance officer for a pain management physician. During his employment the Injured Worker underwent two year on-the-job training with Information Systems and Investigative Services, Ltd. In this position he performed verification of patient demographics; background checks and pill counts for patients; and participated in the performance of drug screens. The Injured Worker utilized a copier, computer scanner and some computer data entry. He worked in this capacity until 2011, when the office closed. The Injured Worker participated in a three week job seeking skills training and eight weeks of job placement/development/job search program in 2012, finding employment as a monitor at Transitions, Inc. This employment met the physical restrictions provided by his physician of record Joseph Valli, D.C. of sitting and standing up to two hours a day; walking up to an hour; lifting and carrying limited to 20 pounds; occasional bending, squatting, crawling and reaching; no climbing; and no use of push/pull arm controls or repetitive use of leg controls. In this position the Injured Worker worked in a half-way house, monitoring paroled inmates. Duties of this position included walking flights of stairs, performing drug searches, and patting down the residents. He worked in this capacity for 21 months. He left this position due to having increased back pain and losing his patience with the residents.

Following his departure from employment in July, 2014, the claim was amended in December, 2014 for depressive disorder. The Injured Worker received temporary total disability compensation until 11/20/2015, when his psychologist, Christopher Ward, Ph.D. opined the depression reached maximum medical improvement. The Injured Worker was referred to vocational rehabilitation in December, 2015. He was found not to be a feasible candidate because he has the necessary skills to conduct a self-directed job search. Closure of his vocational rehabilitation file was affirmed by

Careworks due to the Injured Worker's psychologist indicating he was not ready to return to work. He has supportive therapy once a month with a therapist, Jennifer Conley, LISW, and Regina McKinney, Psy.D. and is prescribed Effexor by Christopher Rowe, M.D.

Regina McKinney, Psy.D., a clinical psychologist, examined the Injured Worker on 01/28/2016 with regard to his application for permanent total disability. She found that secondary to the allowed psychological condition the Injured Worker has limited attention and concentration, with testing scores indicating severe symptoms of depression. Dr. McKinney opined the Injured Worker's depressive symptoms render him unmotivated to maintain attendance and impair his ability to focus on completing tasks, even when working independently. These deficits, combined with being easily overwhelmed and angered, limit his ability to complete tasks on time and multi-task, resulting in an inability to perform even sedentary work. Dr. McKinney opined the Injured Worker is "permanently and totally disabled form all forms of sustained remunerative employment based solely upon the allowed psychological condition in his claim."

Steven Wunder, M.D., a physical medicine and rehabilitation specialist, examined the Injured Worker on 05/04/2016 regarding the allowed physical conditions and the permanent total disability issue. Based on his examination findings, he opined the Injured Worker retains the physical ability to engage in light work without additional restriction.

Stephen Halmi, Psy.D. performed a mental and behavioral health assessment of the Injured Worker on 04/26/2016 regarding the allowed psychological condition and the permanent total disability issue. He found the Injured Worker capable of working "in a low to moderate stress position." Dr. Halmi found moderate impairment in the Injured Worker's ability to: understand and remember detailed instructions; maintain adequate attention and concentration for an extended period of time; maintain a consistent pace of work; maintain a schedule, attendance and be punctual; work closely with other people without being distracted by them; get along with co-workers and supervisors regarding accepting instruction and criticism; and responding appropriately to changes, set realistic goals and independently plan. Mildly impaired abilities include

interacting with the general public and maintaining levels of basic hygiene.

The Staff Hearing Officer accepts and finds persuasive the opinion of Dr. Wunder the Injured Worker is physically capable of performing light work. The Staff Hearing Officer also accepts and finds persuasive the opinion of Dr. Halmi the Injured Worker is capable of performing work in a position with the same or routine daily expectations within a supportive environment.

The Staff Hearing Officer finds that the Injured Worker's age of 59 to be a neutral vocational factor. The Injured Worker has five to six years before attaining the generally accepted age of retirement (65 to 66 years of age). Additionally, the Staff Hearing Officer finds individuals of the Injured Worker's age possess sufficient time to pursue the acquisition of new job skills, at a minimum through on-the-job or short-term training that could enhance their potential for re-employment. The Injured Worker is a high school graduate. Per the IC-2 Application, he has the ability to read and write. He reports limited ability to perform basic math despite being employed for 16 years in the carpentry field. The Injured Worker's career path has involved heavy, medium, light and sedentary level work. The Injured Worker denies having computer skills, noting his work at the doctor's office was limited to inputting some data or scanning documents. He does not utilize the home computer due to both his reported lack of ability and interest. He does not own a smartphone. Despite his downplay of any abilities, the Injured Worker was able to successfully return to work twice after vocational rehabilitation. His work has been vocationally diverse and the Injured Worker has demonstrated resiliency in his ability to be employed. These are positive factors to consider when determining ability to return to the workforce. Moreover, the Injured Worker has experience working at a physician's office, a workplace ideally suited for routine work within a supportive environment. Since last working in 2014 and being found at maximum medical improvement in 2015 the Injured Worker has not attempted to seek any type of work. The Injured Worker presented to hearing well groomed and maintained eye contact when answering all questions posed. He provided detailed answers regarding his former jobs.

As set forth in *State ex rel. Speelman v. Indus. Comm.,* 73 Ohio App.3d, 757 * * * (10th Dist.1992) and *State ex rel.*

*Cunningham v. Indus. Comm.,* 91 Ohio St.3d 261 * * * (2001) the Industrial Commission, when considering a claim for permanent total disability compensation, may consider not just the Injured Worker's past employment skills, but also those skills that may reasonably be developed. Given the Injured Worker's education, work history and involvement with vocational rehabilitation, the Staff Hearing Officer finds he is educational[ly] and vocationally capable of finding work and learning on-the-job skills to perform routine work within the light duty physical demand category.

As stated in *B.F. Goodrich Co. v. Indus. Comm.,* 73 Ohio St.3d 525 * * * (1995), an award of permanent total disability compensation should be allowed only when there is no possibility for reemployment. As the Injured Worker has the residual functional [capacity] to perform light work activity, as described by Dr. Wunder and the residual mental/behavioral capacity to perform work, as described by Dr. Halmi, when considering the impairment arising from the allowed conditions; because the Injured Worker is qualified by age, education and literacy level to obtain and perform such work; and he has or retains the capacity to acquire new job skills, at least through informal means, that could enhance his potential for returning to the workforce, the Staff Hearing Officer concludes that the Injured Worker is capable of sustained remunerative employment and is not permanently totally disabled. Therefore, the IC-2 Application, filed 03/09/2016, is denied.

{¶ 23} 13. On December 21, 2016, relator moved for reconsideration of the SHO's order of November 17, 2016. In support of reconsideration, relator submitted as an exhibit a copy of a commission order issued in another industrial claim of an injured worker whose name and claim number is redacted. Apparently, the three-member commission order was issued following a November 1, 2016 commission hearing. The order grants a request for reconsideration filed by the unidentified injured worker and awards PTD compensation upon the exercise of continuing jurisdiction.

{¶ 24} 14. In awarding PTD compensation in another industrial claim, the three-member commission explains:

It is the decision of the Commission to grant the Injured Worker's IC-2 Application for Compensation for Permanent Total Disability, filed 03/21/2016.

Permanent total disability compensation is hereby awarded from 02/01/2016, less any compensation which may have been previously awarded from said date, to continue without suspension unless future facts or circumstances should warrant the stopping of the award; and that payment be made pursuant to R.C. 4123.58(A).

The Commission finds in a report dated 02/01/2016, based on an examination conducted on such date, Christopher Ward, Ph.D., the Injured Worker's examining psychologist, opined the Injured Worker is permanently and totally disabled as a result of the impairment arising from the allowed psychological condition of the claim.

The Commission further finds in a report dated 06/02/2016, Stephen Halmi, Psy.D., a psychologist examining the Injured Worker at the Commission's request, opined when the impairment arising from the allowed psychological condition is considered, the Injured Worker would be capable of performing work in a low to moderate stress position. However, Dr. Halmi also specified a number of additional restrictions applicable to any employment the Injured Worker would undertake, as follows:

> Because of his depressive symptoms, it is my opinion that he would initially work best in a relatively simple job in which he was required to complete straight forward tasks . . . . He would likely work best in a predictable job where there were little changes in tasks and expectations from day to day. Because of his concentration problems, clear guidelines and protocols, possibly written out and posted, would likely benefit him.

> He would work best if afforded flexibility with regard to pace of work, timing of breaks, exact hours worked, and possibly days worked to accommodate his fluctuation in energy level. Because of his irritability and anhedonia, it would be best if he did not work with the general public, at least initially. It would also be in his best interest if his supervisor was aware of his depression and supportive of the accommodations needed for him to be a successful employee. At this time, it is my

opinion hat he could not work competitively in a fast paced environment or in a job that required quotas and/or high demands for productivity and quick turnarounds . . . .

The Commission finds the restrictions Dr. Halmi specified in his report are so extensive and severe as to constitute in reality an opinion the Injured Worker is not capable of sustained remunerative employment when the impairment arising from the allowed psychological condition is considered, consistent with the opinion of Dr. Ward in his 02/01/2016 report. As such, the Commission finds persuasive Dr. Ward's opinion the Injured Worker is permanently and totally disabled as a result of the medical impairment arising from the allowed psychological condition of the claim. Accordingly, the Commission grants permanent total disability on a medical impairment basis, consistent with State ex rel. Speelman v. Indus. Comm., 73 Ohio App.3d 757 * * * (1992), finding a discussion of non-medical disability factors unnecessary.

The Commission finds the start date for the award of permanent total disability compensation is 02/01/2016, the date of the report from Dr. Ward certifying the Injured Worker's permanent total disability status.

(Emphasis omitted.)

{¶ 25} 15. On January 13, 2017, the three-member commission, splitting two-to-one, denied relator's December 21, 2016 motion for reconsideration in the instant case.

{¶ 26} 16. On February 17, 2017, relator, Steven R. Farrell, filed this mandamus action.

Conclusions of Law:

{¶ 27} The main issue is whether the doctrine of stare decisis compels this court to issue a writ ordering the commission to treat the April 26, 2016 report of Dr. Halmi in the instant claim in the same manner as the commission treated the June 2, 2016 report of Dr. Halmi in the industrial claim of another injured worker.

{¶ 28} Finding that the doctrine of stare decisis does not compel this court to issue a writ in the instant claim, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

{¶ 29} To begin, some observations are in order. The commission's order appended to relator's motion for reconsideration as Exhibit A ("Exhibit A order") states reliance on the February 1, 2016 report of examining psychologist Christopher Ward, Ph.D., in awarding PTD compensation based solely on the allowed psychological condition. The start date for the PTD award is February 1, 2016, the date of Dr. Ward's report. Thus, Dr. Ward's report fully supports the PTD award.

{¶ 30} In the Exhibit A order, the commission in effect rewrites the conclusion of Dr. Halmi's June 2, 2016 report. That is, the commission deletes Dr. Halmi's medical opinion that the allowed psychological condition permits "work in a low to moderate stress position" and substitutes the commission's opinion that "the restrictions Dr. Halmi specified in his report are so extensive and severe as to constitute in reality an opinion the Injured Worker is not capable of sustained remunerative employment."

{¶ 31} While the commission and its hearing officers have the duty to determine the weight and credibility to be given to the medical reports admitted into evidence, *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18, 21 (1987), they cannot render their own opinion on a medical issue because they do not have medical expertise. *State ex rel. Yellow Freight Sys., Inc. v. Indus. Comm.*, 81 Ohio St.3d 56, 58 (1998). *State ex rel. Barnett v. Indus. Comm.,* 10th Dist. No. 13AP-161, 2014-Ohio-311, ¶ 18.

{¶ 32} Thus, in its Exhibit A order, the commission cannot rely on the rewritten report of Dr. Halmi. It was improper for the commission to do so. *State ex rel. Honda of Am. Mfr., Inc. v. Indus. Comm.,* 10th Dist. No. 11AP-65, 2012-Ohio-1371; *State ex rel. Cleveland Browns Football Co., LLC v. Indus. Comm.,* 10th Dist. No. 10AP-564, 2011-Ohio-5656.

{¶ 33} Given that the commission had no authority to rewrite Dr. Halmi's June 2, 2016 report and then rely on the rewritten report to support the PTD award, this court has no authority to issue a writ compelling the commission to repeat the error here.

{¶ 34} Here, relator asserts the April 26, 2016 report of Dr. Halmi relied on by the commission in the instant industrial claim is "identical" to the June 2, 2016 report of Dr. Halmi that is quoted by the commission in the Exhibit A order regarding another industrial claim. Based on his assertion that the April 26 and June 2, 2016 reports of Dr. Halmi are "identical," relator concludes the reports must be treated the same by the

commission in the two industrial claims.  Relator argues that the doctrine of stare decisis compels this result.  Relator is incorrect.  The doctrine of stare decisis does not compel the result relator seeks through this mandamus action.

{¶ 35} Under the legal doctrine of stare decisis, courts follow controlling precedent, thereby creating stability and predictability in our legal system.  *State ex rel. Davis v. Pub. Emps. Retirement Bd.,* 120 Ohio St.3d 386, 2008-Ohio-6254, ¶ 38. The Supreme Court of Ohio adheres to stare decisis as a means of thwarting the arbitrary administration of justice as well as providing a clear rule of law by which the citizenry can organize their affairs.  *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 43, citing *State ex rel. Rocky River v. State Emp. Relations Bd.,* 43 Ohio St.3d 1, 4-5 (1989).  The doctrine is of fundamental importance to the rule of law.  *Id.* at ¶ 44.

{¶ 36} Stare decisis typically applies to principles of law, not findings of fact.  *Rural Health Collaborative of S. Ohio, Inc. v. Testa,* 145 Ohio St.3d 430, 2016-Ohio-508, ¶ 38. Relator seems to acknowledge this limitation of the doctrine when he argues:

> The policy of stare decisis generally involves decisions of legal precedent. In the instant case, the Industrial Commission issued an order on 12-3-16 finding that certain restrictions identified in a medical report from Stephen Halmi, Psy.D. were so severe and extensive as to constitute a finding that a Claimant was not capable of sustained remunerative employment. While this precedent would have applicability only in the limited cases where Dr. Halmi has rendered opinion identifying the exact restrictions set forth in the decision on 12-3-16, it clearly does have applicability to the factual situation now before the Court.

(Relator's Brief at 8.)

{¶ 37} As earlier noted, Dr. Halmi authored the April 26, 2016 report relied on by the commission in the instant claim following a November 17, 2016 hearing before an SHO.

{¶ 38} Earlier, as indicated by the Exhibit A order, following a November 1, 2016 hearing, the three-member commission granted reconsideration and awarded PTD compensation based in part on a June 2, 2016 report from Dr. Halmi.  Thus, on the date of the November 17, 2016 hearing at issue in the instant claim, the commission had

already awarded PTD compensation based in part on Dr. Halmi's June 2, 2016 report. Relator asserts that, under these circumstances, the SHO at the November 17, 2016 hearing in the instant claim was compelled to follow the commission's previous treatment of Dr. Halmi's report following the November 1, 2016 hearing.

{¶ 39} It is clear that the doctrine of stare decisis has no application here. That is, at the November 17, 2016 hearing in the instant claim, the SHO was not bound by the decision of the three-member commission following the November 1, 2016 hearing. Relator is endeavoring unsuccessfully to use the doctrine as to the factual findings of the three-member commission order of November 1, 2016.

{¶ 40} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).